FILED
 2010 Sep-08  PM 01:42
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **CONNIE L. PETTEY,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| vs. | ) Case No. CV-09-S-2041-NE |
| | ) |
| **MICHAEL J. ASTRUE,** Commissioner, Social Security Administration, | ) ) ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**ENTRY OF JUDGMENT UNDER SENTENCE FOUR
OF 42 U.S.C. § 405(g) AND
ORDER OF REMAND**

Claimant, Connie Pettey, commenced this action on October 13, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and this case is due to be remanded to the Commissioner for further proceedings.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly relied upon the assessment of a non-medical state agency disability examiner, and that he failed to properly develop the record. Upon review of the record, the court concludes that these contentions have merit.

Ms. Rebecca Upton, a "Single Decision Maker"[1] who is not a medical provider of any sort, completed a Physical Residual Functional Capacity Assessment form on September 6, 2006. She indicated that claimant could: occasionally lift and carry up to twenty pounds; frequently lift and carry up to twenty-five pounds; stand and/or walk up to about six hours in an eight-hour workday; sit for a total of up to six hours in an eight-hour workday; and perform unlimited pushing and pulling movements. Ms. Upton stated that she relied upon the following summary of medical information in order to support her assessment:

> 46 year old female with allegations of upper back pain due to ruptured discs and meniere's disease.[2] 7/30/03 x-ray of thoracic spine

---

[1] *See* 20 C.F.R. § 404.906(b)(2).

[2] One medical dictionary defines Meniere's disease as "hearing loss, tinnitus, and vertigo resulting from nonsuppurative disease of the labyrinth with edema." *Dorland's Illustrated Medical Dictionary* 538 (30th ed. 2003).

2

> shows severe [degenerative disc disease]. From T7 to T9 there are bridging osteophytes with essentially a fusion there. 7/10/06 ortho exam shows she has almost no mobility in her thoracic spine. [Treating physician] does not think she is a surgical candidate. 5/14 & 5/27/05 exams; clmt c/o itchy watery eyes, sneezing, cough and sinus drainage. No other problems reported. Exam shows TM's normal, nose with pale inferior tubinates (B), neck supple with no lymphadenopathy. Treated for allergic rhinitis and [bilateral lower extremity] edema. 2/11/06 clmt reported dizziness due to Meniere's. Symptoms were reproduced lying down and sitting up. [L]ight headed to look up.[3]

Claimant had the following postural limitations: she could frequently climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; and never balance or climb ladders, ropes and scaffolds. She had no manipulative, visual, or communicative limitations. With respect to environmental limitations, claimant could endure unlimited exposure to wetness, humidity, fumes, gases, dusts, odors, and poor ventilation. She should avoid concentrated exposure to extreme heat or cold, noise, and vibration, and she should avoid even moderate exposure to hazards such as machinery or heights. Ms. Upton stated that claimant's restrictions about heights, hazardous machinery, and professional driving were due to her Meniere's disease. Ms. Upton acknowledged that there was no medical source statement from a treating source in the file, but stated that the following evidence supported her conclusion that the disabling effect of claimant's symptoms was not as severe as claimant alleged:

> Clmt reports that she has difficulties lifting, pulling, and picking up things. She reports limited mobility. Meniere's causes her to be off

---

[3]Tr. at 275 -76.

> balance and dizzy. She reports nausea and sickness. Cannot control
> bowels at times. Clmt reports that standing and sitting causes back pain
> and knee pain with walking and standing. Problems bending over. She
> reports meniere's causes her to be disoriented and sleepy. Clmt's report
> of restrictions is found to be fully credible. However, prior to DLI of
> 12/05 she would have been able to perform work related activities as outlined in this RFC

The ALJ assigned "considerable weight" to Ms. Upton's assessment, and found that claimant had

> the residual functional capacity to perform light work as assessed by the
> state agency . . . . She could stand and/or walk for 6 hours in an 8-hour
> workday and sit for 6 hours in an 8-hour workday. She could lift and/or
> carry 20 pounds occasionally and lift and/or carry 25 pounds frequently.
> She would be unlimited in her ability to push and/or pull with the
> exceptions previously noted. She could perform frequent climbing of
> ramps and stairs, but should never perform climbing of ladders, ropes, or
> scaffolds and never perform activities involving balancing. She could
> perform occasionally activities including stooping, kneeling, crouching,
> and crawling. She should avoid concentrated exposure to extreme cold
> or heat and work environments with noise and vibration. She should
> avoid even moderate exposure to hazardous machinery or heights, but
> would have no limitations in working in areas of wetness and humidity
> or in areas of fumes, odors, dusts, and gases, or in areas of poor
> ventilation.[5]

Claimant argues that the ALJ should not have given such significant weight to a non-physician's assessment, and that he failed to properly develop the record by relying so heavily on Ms. Upton's assessment without seeking additional evidence from a treating or examining medical source. The court agrees with claimant.

---

[4]Tr. at 279.
[5]Tr. at 17.

Claimant bears the ultimate burden of producing evidence to support her disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §§ 416.912(a), (c)). Even so, the ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). [Even so, t]he ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision*. *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 Fed. Appx. 597, 598 (11th Cir. 2005) (emphasis supplied).

Here, the court concludes that the record was not sufficient to support a finding of non-disability without additional evidence of the extent of claimant's functional limitations. The medical evidence reveals (and the ALJ found) that claimant had a severe combination of impairments including Meniere's disease, sensorineural hearing loss, degenerative disc disease of the lumbar and thoracic spines, and obesity.[6] Some of these impairments have the potential to cause significant functional limitations. For example, records from Dr. Dennis Pappas of the Pappas Ear Clinic indicate that claimant experienced constant ringing in her ears, an episode of vertigo with nausea

---

[6]Tr. at 16.

and vomiting every two weeks, and spontaneous dizziness.[7]  Furthermore, Dr. Robert A. Sparks from Decatur Orthopaedic Clinic stated in 2003 that x-rays of claimant's thoracic spine revealed "fairly severe degenerative arthritis (degenerative disc disease)," and that "[f]rom T7 to T9 there are bridging osteophytes with essentially a fusion there."  Dr. Sparks discussed with claimant that "her back will not stand lifting/pulling job[s] for many more years."[8]  Dr. Sparks saw claimant again in July of 2006, and stated:

> This woman was evaluated here 2 years ago because of horribly severe degenerative changes in her mid to lower thoracic spine.  Since I last saw her she has been having chiropractic treatments and has been going to a pain clinic.  She says none of this helps.  She came by to see if I had any new ideas.  She has developed Meniere's disease and is unable to take any anti-inflammatories.  She has been treating her own back pain with Tylenol.  Knee jerks and ankle jerks are symmetrical and of normal amplitude.  She can walk on her tip toes and on her heels without apparent weakness.  She has almost no mobility in her thoracic spine.  Some of this is related to her massive obesity, I presume.  I told Mrs. Pettey that she might want to go talk with a spine surgeon but because she had multiple discs involved I did not think that she really was a surgical candidate.  She said she did not want to think about surgery anyway.  I told her I had no new or different treatments to suggest.[9]

Constant ringing of the ears, repeated dizzy episodes, and "horribly severe" deterioration resulting in "almost no mobility" in the thoracic spine could reasonably

---

[7] Tr. at 211.
[8] Tr. at 272.
[9] *Id.*

be expected to result in significant functional limitations. The ALJ needed the assistance of expert testimony in order to determine the extent of those limitations.[10]

It was not *per se* wrong for the ALJ to rely upon Ms. Upton's assessment to inform his decision about the extent of claimant's functional limitations. Indeed, Social Security regulations explicitly provide for the use of a "single decisionmaker" model for evaluating claims. The relevant regulatory provision states:

> In the single decisionmaker model, the decisionmaker will make the disability determination and may also determine whether the other conditions for entitlement to benefits based on disability are met. *The decisionmaker will make the disability determination after any appropriate consultation with a medical or psychological consultant.* The medical or psychological consultant will not be required to sign the disability determination forms we use to have the State agency certify the determination of disability to us (see § 404.1615). However, before an initial determination is made that a claimant is not disabled in any case where there is evidence which indicates the existence of a mental impairment, the decisionmaker will make every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment pursuant to our existing procedures (see § 404.1617). In some instances the decisionmaker may be the disability claim manager described in paragraph (b)(1) of this section. When the decisionmaker is a State agency employee, a team of individuals that includes a Federal employee will determine whether the other conditions for entitlement to benefits are met.

---

[10]The court emphasizes that it is *not* holding that an ALJ must always obtain medical expert testimony before evaluating a claimant's residual functional capacity. Instead, the court holds that, *under the facts presented in this case,* claimant's impairments were sufficiently significant to indicate the potential for disabling functional limitations, and that the ALJ needed a medical expert's opinion to determine the extent of those limitations.

20 C.F.R. § 404.906(b)(2) (emphasis supplied).[11]  Ms. Upton's evaluation of claimant's claim was made pursuant to this model.  Even so, there are several indications that her evaluation was less than complete and/or less than fully reliable, and that the ALJ should have sought additional medical expert opinion before determining claimant's disability status.  First, there is no indication that Ms. Upton consulted with a medical expert before making her assessment, as contemplated by the regulations.  Furthermore, Ms. Upton's assessment is internally inconsistent.  Ms. Upton opined that claimant could *occasionally* lift and carry only twenty pounds, but she could *frequently* lift and carry up to twenty-five pounds.  It makes no sense that claimant could be expected to lift a heavier weight more frequently than she could be expected to lift a lighter weight.  Finally, Ms. Upton found claimant's report of restrictions to be *fully credible*, but then went on to state that, prior to claimant's date last insured, she would have been able to perform work activities consistent with the residual functional capacity assessment.  There are two problems with this conclusion.  First, Ms. Upton stated that claimant's date last insured was December of *2005*, but, at the administrative hearing, the ALJ found that the date last insured was December of *2006*.  The court can find no explanation in the record for this discrepancy.[12]

---

[11]The "single decisionmaker" model is one of four test groups being employed by the Social Security Administration for the purpose of testing potential modifications to the disability determination process.  *See* 20 C.F.R. § 404.906(a).

[12]Perhaps the ALJ concluded that claimant had sufficient earnings in 2006 to warrant an additional year of coverage.

Whatever the reason, it is clear that Ms. Upton did not evaluate claimant's ability to perform work activities between December of 2005 and December of 2006. Also, and perhaps more significantly, claimant Claimant reported problems lifting, pulling, and picking up things; limited mobility; loss of balance; dizziness; nausea; loss of bowel control, back and knee pain upon sitting, standing, and walking; problems bending over; disorientation; and sleepiness. Ms. Upton found all of those complaints to be fully credible, but nonetheless concluded that claimant could perform work activities consistent with the residual functional capacity finding. Ms. Upton failed to explain why claimant could be expected to perform the level of work activities assessed despite all of the impairments she alleged.

Based on all of the foregoing, the court concludes that the ALJ's reliance on Ms. Upton's assessment was in error, and that the ALJ's finding of no disability was not supported by substantial evidence. The ALJ should have fulfilled his duty to fully develop the record by requesting an additional consultative examination or additional evidence from claimant's treating sources. Remand is warranted for the ALJ to correct those errors.

Based on the foregoing, the decision of the Commissioner is reversed, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The Clerk of Court is directed to close this file.

DONE this 7th day of September, 2010.

_____
United States District Judge